IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs August 8, 2017

## STATE OF TENNESSEE v. BENNIE EDWARD JACKSON, JR. a/k/a BENNY E. JACKSON, JR.

**Appeal from the Criminal Court for Davidson County**
**No. 2015-A-252       Cheryl A. Blackburn, Judge**

_____

### No. M2016-02575-CCA-R3-CD
_____

A Davidson County jury convicted the Defendant, Bennie Edward Jackson, Jr., of aggravated assault, and the trial court sentenced him to serve eight years of incarceration. On appeal, the Defendant contends that: (1) the evidence is insufficient to sustain his conviction; (2) he was subject to an unfair trial because the jury pool heard substantially prejudicial comments during voir dire; and (3) a State's witness presented inflammatory and substantially prejudicial testimony to the jury that should have been prohibited. After review, we affirm the trial court's judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which D. KELLY THOMAS, JR. and J. ROSS DYER, JJ., joined.

David A. Dearolf, Nashville, Tennessee, for the appellant, Bennie Edward Jackson, Jr.

Herbert H. Slatery III, Attorney General and Reporter; M. Todd Ridley, Assistant Attorney General; Glenn R. Funk, District Attorney General; and Nathan McGregor, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION
### I. Facts

This case arises from a domestic dispute that occurred during the early morning hours of October 4, 2014. As a result of this dispute, a Davidson County grand jury indicted the Defendant for aggravated assault by strangling his wife, the victim. The parties presented the following facts at the Defendant's trial: The victim recalled the events surrounding the alleged assault, saying that she went to the Defendant's aunt's

house on October 3, 2014, after she and the Defendant dropped off her grandson at 10:30 p.m. The victim estimated that she and the Defendant arrived at the Defendant's aunt's home at around 11:00 p.m.

The victim said that she and the Defendant sat in the truck in the driveway talking for between twenty to thirty minutes. He had been angry before they arrived at the Defendant's aunt's house, and the conversation remained "heated." The victim recalled that, while she had consumed only one alcoholic beverage, the Defendant had consumed "a lot more" alcohol.

The victim recalled that, during the conversation, the Defendant became very angry and, at one point, he punched her in the side of the face. He then reached down on the side of her truck, and she feared that he was attempting to retrieve a screwdriver to use as a weapon. She said she jumped out of the truck and ran toward the Defendant's aunt's house and began banging on the front door. The victim recalled seeing a light in the house come on, and she felt relief. Immediately thereafter, however, the Defendant grabbed her by her neck and threw her down. The victim recalled that the Defendant was on top of her using his fists to punch her. She said that she partially lost consciousness. The victim said that she recalled the Defendant having his hands around her neck, and she said that it hurt to swallow and was hard to talk. She believed that her loss of consciousness was due to the Defendant's strangulation of her. The victim said that, while she was unconscious, she lost control of her bowels and soiled herself.

The victim testified that the Defendant's cousin and the Defendant's uncle answered the door, and she recalled hearing them tell the Defendant to stop and to get off of her. The victim said she crawled into the house and sat in a chair for a minute during which time she realized she had soiled herself. The victim said that she was going to call the police, but the Defendant's cousin said she should not call the police and "bring them to [her] house." The Defendant's cousin then handed the victim her keys. The Defendant came into the house and acted really nice toward her as if "everything [was] good."

The victim said that, when she left, she drove herself to the hotel room where she lived with her daughter and her four grandchildren. The victim said that her daughter awoke when she arrived home and noticed the victim's injuries. The victim said she had marks on her throat and face and that her teeth were loose. She ultimately lost one of her teeth as a result of this incident. The victim said that she got into the shower to clean the feces off of her herself while her daughter called the police. Multiple police officers responded. The victim said she did not seek medical attention because she was unemployed and did not have health insurance.

2

The victim said that it took her a couple of weeks to recover. Her throat hurt during that period of time. The victim identified photographs that the police took of her injuries. In the pictures, she identified her swollen lips, the bruising on both sides of her neck and jaw, and her damaged tooth. She stated that the Defendant had both hands around her neck when he choked her.

During cross-examination, the victim testified that, initially, she did not want to pursue prosecution of the Defendant for his actions. The victim recalled that, the day of the incident, she picked up the Defendant at around 4:00 p.m. By 6:00 p.m., he was drinking, but she was not. He took her truck and left her at his mother's house. The victim went to the home of her friend, Celestine Moorehead, until almost 10:00 p.m. While at her friend's home, the victim had "a very small amount" of whisky and played cards with Ms. Moorehead and Ms. Moorehead's boyfriend.

The victim said that the Defendant returned to her friend's house at around 9:50 p.m. at which time she, the Defendant, and Ms. Moorehead got into the victim's truck with the victim driving. They went to pick up her grandson, who had just performed in the marching band at his high school football game. The group dropped off the victim's grandson at the hotel and then dropped off Ms. Moorehead back at her home. The victim then drove the Defendant to his aunt's house, where the argument ensued. She estimated that it was after 12:00 a.m. when she arrived at the hotel.

The victim recalled that, when the Defendant was on top of her with his hands around her neck, she attempted to bite and kick him. She said she also tried to scream, and she did not know how long she was there before the Defendant's cousin answered the door.

The victim's daughter, Jamesha Hendricks, testified that she was at her hotel room with her children during the early morning hours of October 4, 2014, when the victim came home "terrified." She said she had never seen the victim "like that" before, saying that the victim's eyes were big, she was crying, and she had defecated on herself. When she turned on the light, she saw that the victim's neck was swollen and bruised. The victim also had a loose tooth, which moved when the victim talked. Ms. Hendricks recalled that the victim was hoarse and told her that the Defendant had tried to kill her.

Ms. Hendricks said that she immediately called the police from her cell phone. She said that both she and the victim spoke with the 911 operator and, eventually, two officers brought the victim back her cell phone and photographed the victim's injuries. Ms. Hendricks explained that she did not take the victim to the hospital at the time because money and transportation were an issue. Ms. Hendricks said that she had never spoken with the Defendant about these events.

3

During cross-examination, Ms. Hendricks testified that she did not see what had happened to the victim. She was unsure whether the victim told the police that she did not want to prosecute the Defendant, explaining that this was approximately the fourth case that the victim had against the Defendant.

Casey Tomes, an officer with the Metropolitan Nashville Police Department, testified that he responded to the call about the assault. He said that, when he met the victim at the hotel, he noticed that she was upset and had visible injuries. He and another officer documented the injuries and asked her what had happened. Officer Tomes said that the victim showed him where she had been injured and described what had happened. He recalled that she had discoloration around her neck, some bruising around her eye, and a loose tooth. She did not appear in a "critical state" in need of medical attention.

Officer Tomes said that, after speaking with the victim, he obtained warrants for the Defendant's arrest. The victim said that the Defendant was spending the night at the same location where the assault occurred, so the officer went there to serve the arrest warrant. At the scene, he found a broken cell phone on the front porch, which they later returned to the victim. The Defendant was not present at the house, and the residents of the house were not "exactly cooperative." Officer Tomes said that he located the Defendant later during his shift, and the Defendant did not make any statements at the time of his arrest.

During cross-examination, Officer Tomes testified that his report indicated that the victim told him that she had been drinking beer and talking to the Defendant at the time of the argument. The report also indicated that she said that the Defendant took a "swing" at her in the truck but did not make contact before she exited the vehicle. She told him that she bit the Defendant on the hand at some point during the confrontation.

Officer Tomes testified that he reported to the victim's hotel room at 3:15 a.m. after the incident. His report indicated that the victim said she did not want to pursue prosecuting the Defendant, and she informed him that she had previously refused an order of protection.

Officer Tomes said that he and Sergeant Ryan Lockwood took the Defendant, who he described as cooperative, into custody at around 6:00 a.m. that morning. The officer said he did not take a photograph of the Defendant's hands.

Denise Moore, the Defendant's cousin, testified that she was living in the home where this incident occurred and was present on that night. Ms. Moore lived in the home

4

with her parents, and she said that, the night of this incident, she was awoken during the night by the Defendant and the victim arguing. Ms. Moore testified that she never heard anyone knock on the door. She went to the door and told them to get off of the porch and stop making noise. Ms. Moore testified that, when she opened the door, the victim was standing at the door, and the Defendant was facing her. Ms. Moore invited the couple to come in and asked them to stop making noise.

Ms. Moore said that the victim walked into the house on her own, and Ms. Moore, who had decided to return to bed, heard the victim and the Defendant continue arguing. Ms. Moore said that the victim never asked her to call the police and that she never crawled into the house. Ms. Moore said that the victim did not appear to have lost control of her bowels, and Ms. Moore did not smell anything foul.

Ms. Moore testified that the Defendant was her second cousin and that they were "close." She said that she had not spoken with him since this incident.

Sergeant Ryan Lockwood, with the Metropolitan Nashville Police Department, testified that he responded to the call in this case and photographed the victim. He said he was also present when the police took the Defendant into custody. Sergeant Lockwood said that, had the Defendant had any known injuries such as a bite mark, he would have taken photographs of those injuries. He did not personally see any injuries on the Defendant's hands.

Based upon this evidence, the jury convicted the Defendant of aggravated assault, and the trial court sentenced him to serve eight years of incarceration.

## II. Analysis

On appeal, the Defendant contends that: (1) the evidence is insufficient to sustain his conviction; (2) he was subject to an unfair trial because the jury pool heard substantially prejudicial comments during voir dire; and (3) a State's witness presented inflammatory and substantially prejudicial testimony to the jury that should have been prohibited.

### A. Sufficiency of Evidence

The Defendant first contends that the evidence is insufficient to sustain his conviction because the victim offered false and misleading testimony about her drinking on the day of the incident. He further contends that the victim's testimony that she bit the Defendant was not supported by the officer's observations of the Defendant's hands. The Defendant also notes that Ms. Moore contradicted the victim's testimony. He finally

calls into question other testimony given by the victim. The State counters that the evidence is sufficient to support the Defendant's conviction based upon the victim's testimony, which the jury by its verdict found credible. We agree with the State.

When an accused challenges the sufficiency of the evidence, this Court's standard of review is whether, after considering the evidence in the light most favorable to the State, "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see* Tenn. R. App. P. 13(e); *State v. Goodwin*, 143 S.W.3d 771, 775 (Tenn. 2004) (citing *State v. Reid*, 91 S.W.3d 247, 276 (Tenn. 2002)). This standard applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of both direct and circumstantial evidence. *State v. Pendergrass*, 13 S.W.3d 389, 392-93 (Tenn. Crim. App. 1999) (citing *State v. Dykes*, 803 S.W.2d 250, 253 (Tenn. Crim. App. 1990)). In the absence of direct evidence, a criminal offense may be established exclusively by circumstantial evidence. *Duchac v. State*, 505 S.W.2d 237, 241 (Tenn. 1973). "The jury decides the weight to be given to circumstantial evidence, and '[t]he inferences to be drawn from such evidence, and the extent to which the circumstances are consistent with guilt and inconsistent with innocence, are questions primarily for the jury.'" *State v. Rice*, 184 S.W.3d 646, 662 (Tenn. 2006) (quoting *Marable v. State*, 313 S.W.2d 451, 457 (Tenn. 1958)). "The standard of review [for sufficiency of the evidence] 'is the same whether the conviction is based upon direct or circumstantial evidence.'" *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011) (quoting *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009)).

In determining the sufficiency of the evidence, this Court should not re-weigh or reevaluate the evidence. *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Nor may this Court substitute its inferences for those drawn by the trier of fact from the evidence. *State v. Buggs*, 995 S.W.2d 102, 105 (Tenn. 1999) (citing *Liakas v. State*, 286 S.W.2d 856, 859 (Tenn. 1956)). "Questions concerning the credibility of witnesses, the weight and value to be given the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact." *State v. Bland,* 958 S.W.2d 651, 659 (Tenn. 1997). "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." *State v. Grace*, 493 S.W.2d 474, 476 (Tenn. 1973). The Tennessee Supreme Court stated the rationale for this rule:

> This well-settled rule rests on a sound foundation. The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand. Thus the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses. In the trial forum alone is there human

6

atmosphere and the totality of the evidence cannot be reproduced with a written record in this Court.

*Bolin v. State*, 405 S.W.2d 768, 771 (Tenn. 1966) (citing *Carroll v. State*, 370 S.W.2d 523, 527 (Tenn. 1963)). This Court must afford the State of Tennessee the "'strongest legitimate view of the evidence'" contained in the record, as well as "'all reasonable and legitimate inferences'" that may be drawn from the evidence. *Goodwin*, 143 S.W.3d at 775 (quoting *State v. Smith*, 24 S.W.3d 274, 279 (Tenn. 2000)). Because a verdict of guilt against a defendant removes the presumption of innocence and raises a presumption of guilt, the convicted criminal defendant bears the burden of showing that the evidence was legally insufficient to sustain a guilty verdict. *State v. Carruthers*, 35 S.W.3d 516, 557-58 (Tenn. 2000) (citations omitted).

As it relates to this case, an assault is defined as: "Intentionally or knowingly causes another to reasonably fear imminent bodily injury . . . ." T.C.A. § 39-13-101(a)(2). Tennessee Code Annotated section 39-13-102, which is the statute codifying aggravated assault, provides: "A person commits aggravated assault who: (A) Intentionally or knowingly commits an assault as defined in § 39-13-101, and the assault: . . . Was intended to cause bodily injury to another by strangulation or bodily injury by strangulation was attempted." T.C.A. § 39-13-102(a)(1)(A)(iv). For purposes of subdivision (a)(1)(A)(iv) "'strangulation' means intentionally impeding normal breathing or circulation of the blood by applying pressure to the throat or neck or by blocking the nose and mouth of another person." T.C.A. § 39-13-102(a)(2).

In the case under submission, the evidence viewed in the light most favorable to the State showed that the Defendant, who had been drinking, engaged in an argument with the victim while the two were in a parked truck together. He hit her in the face, causing bruising. She ran out of the truck and the Defendant gave chase, catching her while she knocked on the door of his aunt's home. The Defendant dragged the victim to the ground, placed his hands around her neck, causing her to be unable to breathe. The victim lost consciousness and defecated on herself. She then crawled into Defendant's aunt's house and asked to call the police; a request which the occupants of the house denied. The victim drove herself to her daughter's hotel room, where her daughter saw and smelled feces on the victim. The victim took a shower while her daughter called police. The police responded to the hotel room and took pictures of the victim, which showed bruises to her face and also around her neck. This evidence sufficiently supports the Defendant's conviction for aggravated assault.

**B. Voir Dire**

The Defendant next contends that he was subject to an unfair trial because the jury

pool heard substantially prejudicial comments during voir dire. The Defendant notes that a prospective juror, "Juror Evans," said in front of the venire that he had seen some information on the internet about "an individual that's involved in this." Juror Evans went on to say that the information had to do with this case and some other cases in the past and that he believed the information's accuracy. The trial court said that, perhaps, this was not the best case for Juror Evans to sit on, and the judge excused Juror Evans. The Defendant further contends that several jurors were excused based upon their expressed disdain for cases involving allegations of domestic violence. The Defendant asserts that "it does appear" that the statements of bias made by some members of the venire before they were excused influenced other members of the jury pool. The State counters that the Defendant has waived this issue because he failed to object during voir dire and waited until the jury was impaneled to request a new trial. We agree with the State.

Article I, section 9 of the Tennessee Constitution guarantees a criminal defendant the right to trial "by an impartial jury." In fact, every accused is guaranteed "a trial by a jury free of . . . disqualification on account of some bias or partiality toward one side or the other of the litigation." *State v. Akins*, 867 S.W.2d 350, 354 (Tenn. Crim. App. 1993) (citing *Tooms v. State*, 270 S.W.2d 649, 650 (Tenn. 1954)). The rules "prescribing jury selection procedures are intended to protect the integrity of the jury system by providing a uniform and ordered method that ensures the accused a fair and impartial jury chosen from a fair cross-section of the community." *State v. Coleman*, 865 S.W.2d 455, 458 (Tenn. 1993). When a defendant alleges error in the jury selection process, "[i]t is the burden of the defendant to prove prejudice or purposeful discrimination in the selection of a jury. Prejudice will not be presumed." *Id.*

Voir dire is very important, and its integrity must be zealously guarded. *Akins*, 867 S.W.2d at 354 (citing numerous Tennessee opinions from each of our appellate courts expressing this principle). "Jurors who have prejudged certain issues or who have had life experiences or associations which have swayed them in response to those natural and human instincts common to mankind interfere with the under pinnings of our justice system." *Id.* at 354. "Trial courts enjoy considerable discretion in jury selection to question jurors regarding their qualifications to serve, to conduct individual or group voir dire, and to determine whether jurors should be excused for cause." *State v. Frausto*, 463 S.W.3d 469, 481 (Tenn. 2015) (citing Tenn. R. Crim. P. 24(b), (c); *State v. Sexton*, 368 S.W.3d 371, 390-91 (Tenn. 2012)). In reviewing such decisions, appellate courts typically apply an abuse of discretion standard. *Id.* A trial court abuses its discretion when it "applies incorrect legal standards, reaches an illogical conclusion, bases its ruling on a clearly erroneous assessment of the proof, or applies reasoning that causes an injustice to the complaining party." *State v. Phelps*, 329 S.W.3d 436, 443 (Tenn. 2010).

8

As the State correctly points out, the Defendant did not lodge a contemporaneous objection to the voir dire process employed by the trial court. The Defendant's failure to lodge a contemporaneous objection results in a waiver of plenary review of this issue. *See* Tenn. R. App. P. 36(a) ("Nothing in this rule shall be construed as requiring relief be granted to a party responsible for an error or who failed to take whatever action was reasonably available to prevent or nullify the harmful effect of an error."); *see also State v. Killebrew*, 760 S.W.2d 228, 235 (Tenn. Crim. App. 1988) (waiver applies when the defendant fails to make a contemporaneous objection); *State v. Jenkins*, 733 S.W.2d 528, 532 (Tenn. Crim. App. 1987). Moreover, we see no basis for noticing plain error despite waiver. *See* Tenn. R. App. P. 36(b). The jurors about which the Defendant complains were all excused for cause. He does not identify or allege that any specific other empanelled juror was biased, but he makes a general assertion that "it appears" that excusing the jurors for cause could not effectively remove the taint cast upon the proceedings. We disagree. The remaining jurors were asked if they could be fair and impartial, and they answered affirmatively. There is no allegation or evidence of actual bias or prejudice of the jury panel, and the Defendant cannot establish that the failure to *sua sponte* restart the selection process with a new panel adversely impacted any substantial right. *See State v. Smith*, 24 S.W.3d 274, 282, 283 (Tenn. 2000) (holding that reviewing court will not recognize the existence of plain error unless the defendant can establish, among other things, that "'a substantial right of the accused [was] adversely affected'"). The Defendant is not entitled to relief on this issue.

## C. State's Witness's Testimony

The Defendant lastly contends that a State's witness presented inflammatory and substantially prejudicial testimony to the jury that should have been prohibited. The Defendant filed a motion *in limine* to prevent the introduction of inadmissible evidence about prior allegations that he abused the victim. The trial court granted the motion. The Defendant takes issue with statements made by the victim's daughter during her testimony.

The first statement came from the victim's daughter, Ms. Hendricks, who stated that she did not have a good relationship with the Defendant. The State asked Ms. Hendricks if she called the ambulance, and Ms. Hendricks responded that she did not because the victim did not want to go. She further stated, "This is not the first time that this has happened." The trial court immediately interjected and told the jury to disregard that statement, and it asked Ms. Hendricks not to "volunteer any information."

The second statement that the Defendant contests occurred during cross-examination when the Defendant's counsel asked Ms. Hendricks if the victim told police officers that she would refuse an order of protection. Ms. Hendricks responded: "She's

had so many cases against him I don't know.  I don't know.  I don't know.  This is like the fourth case against him."

The State notes that the Defendant did not object to either statement.  The Defendant contends that the trial court erred when it did not *sua sponte* issue a curative instruction.

A defendant "will not be permitted to take advantage of errors which he himself committed, or invited, or induced the trial court to commit, or which were the natural consequences of his own neglect or misconduct."  *State v. Robinson*, 146 S.W.3d 469, 493 (Tenn. 2004) (quoting *Norris v. Richards*, 193 Tenn. 450, 246 S.W.2d 81, 85 (Tenn. 1952)) (quotation marks omitted).  To that end, "[i]f a party fails to request a curative instruction, or if dissatisfied with the instruction given and does not request a more complete instruction, the party effectively waives the issue for appellate purposes."  *State v. Griffis*, 964 S.W.2d 577, 599 (Tenn. Crim. App. 1997).  Furthermore, failure to request a mistrial waives any further action by the trial court.  *Hall*, 976 S.W.2d at 157.

While we acknowledge that the Defendant filed a motion *in limine* to exclude evidence of prior allegations of assault, he neither objected nor asked for a curative instruction regarding the two statements about which he now complains.

> In most cases, the failure to raise a contemporaneous objection to the admission of evidence at the time the evidence is introduced at trial results in waiver of the particular issue on appeal.  *See* Tenn. R. App. 36(a); *State v. Thompson*, 36 S.W.3d 102, 108 (Tenn. Crim. App. 2000).  However, an objection is considered contemporaneous if counsel makes the objection in a motion in limine and the particular issue is considered and ruled upon.  *State v. Alder*, 71 S.W.3d 299, 302 (Tenn. Crim. App. 2001).  In such cases, counsel is not required to make repetitious objections to issues which have been previously ruled upon in order for that issue to be preserved on appeal.  *Id.*  Nonetheless, counsel must be vigilant to object contemporaneously to issues which are only tentatively suggested or incompletely developed in connection with a motion in limine, otherwise, counsel risks waiver of the issue on appeal.  *Id.*; *see also State v. McGhee*, 746 S.W.2d 460, 462 (Tenn. 1988).

*State v. David Duggan*, No. E2010-00128-CCA-R3CD, 2011 WL 4910368, at *10 (Tenn. Crim. App., at Knoxville, Oct. 17, 2011), *no perm. app. filed.*

In this case, the motion *in limine* asked that, among other things, the State's witnesses not refer or allude to: evidence that the Defendant had committed any other

criminal offenses or engaged in any other acts of misconduct other than those alleged in the instant indictment. Upon this basis, the trial court instructed the jury to disregard Ms. Hendricks's testimony regarding the fact that this was not the victim's first case against the Defendant. In our view, the trial court's instruction on this issue was sufficient. As to the second statement, regarding the order of protection, we conclude that the Defendant has waived this issue for failing to lodge a contemporaneous objection. The motion in limine did not encompass any order of protection testimony, and Defendant's counsel elicited this testimony. Ms. Hendricks's response that she was unsure of the facts of this case because there were other cases in the past was in direct response to the Defendant's question. Had the Defendant desired a curative instruction about this testimony, he should have objected to Ms. Hendricks's response and requested one. Having failed to do so, he has waived the issue on appeal.

### III. Conclusion

In accordance with the foregoing reasoning and authorities, we affirm the trial court's judgment.

_____
ROBERT W. WEDEMEYER, JUDGE

11